DECISION
INTRODUCTION
This matter is a summation of the consolidated cases of SU 09-05 and SU-07 filed before this Court. This case was heard by the Court on January 16, 2010 before Chief Justice Hunter, Justice Fun-maker and Justice Greendeer-Lee presiding. Attorney Michael Murphy of Whyte, Hirsehboeck, Dudek, S.C. represented the Appellants, Attorney Mark Goodman of Osborne, Goodman & Tripp, S.C. represented the Appellee, and Attorney William Gardner, on behalf of the Grievance Review Board. The Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) reverses the decision of the Trial Court.
PROCEDURAL HISTORY
This matter began as a grievance before the Grievance Review Board (GRB 187.06.-T). On August 15, 2008, the Trial Court issued an Order, reversing the agency’s decision and remanding the case back to the Grievance Review Board (hereinafter GRB). Order (Remand), CV 07-44 (HCN Tr. Ct., Aug. 15, 2009) at 17. The GRB appealed the August 15, 2009 Order (Remand). on October 14, 2009 to the Supreme Court. See SU 08-04.
The Supreme Court remanded the instant case “to the Trial Court with instructions to clarify its reasoning and to issue a single, cohesive decision.” Wayne Falcon v. Liz Haller, et. ai, SU 08-04 (HCN S.Ct. Feb 6, 2009) at 6. The Trial Court convened the Remand Hearing on March 17, 2009 at 10:00 a.m. CDT. Trial Court entered a Remand Order (Reversing and Remanding to the Grievance Review Board), CV 07-44 (HCN Tr. Ct., Jul. 27, 2009).
On August 6, 2009, the Appellants filed a Petition for Permission to Appeal Pursuant to HCN R.App. P.8. Appellants filed two additional actions, Appellants’ Notice of Appeal and Appellants’ Motion to Stay in the matter on September 21, 2009. By order of this Court, SU 09-05 and SU 09-07 were accepted for appeal, consolidated for judicial prudence, and the Trial Court Remand Order, dated July 27, 2009, is stayed pending appeal. Oral Arguments were convened on January 16, 2010. Now this matter is ripe for determination.
ISSUES
I. Did the Trial Court fail to comply with the Supreme Court’s directive—discuss its “arbitrary and capricious” analysis?
II. Was the Trial Court’s substantive analysis of the “arbitrary and capricious” standards an abuse of its discretion and amounted to legal error?
III. Was the Trial Court’s Due Process analysis incorrect?
IV. Did the Trial Court’s remedy violate the cap on damages under the HCN Limited Waiver of Sovereign Immunity?
DECISION
I. Did the Trial Court fail to comply with the Supreme Court’s directive-discuss its “arbitrary and capricious” analysis?
This Court gave the lower court an opportunity to discuss its reasoning for *397 modifying the GRB decision as arbitrary and capricious. Based on the lower court’s decision of February 6, 2009, it was unclear how the lower court so quickly dismissed the standard of review and apply de novo standard of review when it reiterated such review is not permitted. “The Trial Court may only set aside or modify a Board decision if it was arbitrary and capricious.” ERA § 5.35e.
In its most recent Remand Order, the lower court was not satisfied the GRB used the facts presented and dismiss the applicable law to adequately derive at its decision. As result, the Trial Court order abandoned the arbitrary and capricious standard and substitutes with a de novo standard of review by articulated that this matter rose to constitutional standard of review as noted in Willard Lonetree v. Larry Garvin SU 07-04 (HCN S.Ct. Oct. 6, 2007) CV 06-74 (HCN Tr. Ct. Mar. 9, 2007). It noted “the guiding principle in statutory interpretation is that statutes cannot be interpreted in such a vcay to violate constitutional pxinciple. Only the Judiciary has the “power to interpret and apply the Constitution and law's of the Ho-Chunk Nation.” HCN CONSTITUTION ART, VII, § 2 Id. at 6.
It is for this reason this Court must review the distinctions between the Lone-tree matter in and the matter at hand. In Lonetree, the question was whether the person, who had no supervisory authority over the grievant, could have changed the outcome of the disciplinary action, especially since the outcome of a pre-deprivation could possibly provide the grievant leniency from his employer, to consider extenuating circumstances, or the ability to critique the investigation itself. Lonetree, SU 07-04 at 8. The lower court said Lonetree allows a supervisor pre-de-privation hearing to be heard and therefore, the grievant should be offered the time to explain extenuating circumstances or ability to critique the investigation that could possibly change the outcome of the discipline action and this did not occur in matter before this Court. This was stated since the disciplinary action was discretionary and depending on the response of the grievant, the disciplinary outcome may have been different.
This matter is unlike the matter in Lon-etree, whereby the disciplinary action could be influenced by the grievant extenuating circumstances or the ability to critique the investigation itself. Here, the ERA mandates that termination is the next action, could the grievant supervisor expect to change the outcome of the disciplinary action taken knowing his work was incomplete and there were outstanding evaluations or remaining infractions at the time of the meeting. Pursuant to the ERA, if the supervisor continues to violate this policy, he or she shall be terminated. Bright-line rule applies, either the Grievant completes the late evaluations within the prescribed timeframe or not. The Grievant did not. From his supervisor training, the grievant had learned this outcome was possible. As an experienced supervisor meeting with his supervisor, he never attempted to offer exceptions, but remained mute during the course of the disciplinary meeting.
Using Lonetree as a fundamental reason for applying a different standard of review-*; novo is acceptable. Since Lone-tree, the lower court chose to be finding a constitutional principle at stake and therefore, rendei’ing decisions in such a way to comport with constitutional principies. For the matter at hand this is wrong. Here, the lower court stated that due process is a constitutional necessary process; this Court disagrees.
*398 II. Was the Trial Court’s substantive analysis of the “arbitrary and capricious” standards an abuse of its discretion and amounted to legal error?
The lower court was not troubled that the grievant, a supervisory in the same position for six year, was known to have a pattern of late evaluations. GRB 187.06.T at 95 of 111. Submission by two testimonials was the grievant had late evaluations of eleven (11) infractions in calendar year 2004 and he had ten (10) outstanding evaluations due in the calendar year 2005 causing this matter. Moreover, he admitted each time they [the Personnel Department] mad [sic] a new one [policy] I got a new one. He said yes when asked about whether he “went through the supervisor’s training.” Id. at 95. The Grievant did not offer any extenuating circumstances worthy of consideration. Mindful that all reasons were only offered during the proceedings only, he mentioned his poor health. Yet he testified he was working 40 hours a week (full-time) and he was able to make three (3) trips to another work site in spite of winter weather (December-January) while trying to remedy the late evaluations. Unusual that he argued his reason for the other outstanding evaluations was because the employee did not want another evaluation. Why would an employee wish to havé an evaluation when a late evaluation automatically allows such employee to receive the highest possible wage increase for the next working year.
Now, the record did show the grievant checked his email at least once or twice a week. Id. at 96. Falcon testified that he did not open inter-office mail “but finally I’d receive them ... Because the secretary does that and addresses it to the people who actually its’ addressed to.” Id. at 100. The lower court noted that he was “unsure as to whether he received the email.” Falcon testified that only received notice via inter-office mail i.e., pony express. Yet another contradiction in statement by stating he called Linda Maddy [sic] when he received an email notice showing “URGENT-LATE EVALUATION NOTICE showing 10 outstanding evaluations urging he complete the outstanding evaluations.” Exhibit email notice of 12/28/05. He testified that he checked his email at least once or twice a week. Id. at 96.
Finally and unlike other processing of the business or agency, the Trial Court assumed the failure to read or remember seeing the Notice by this grievant to be the burden of the Personnel who prepared the Notice in the first place. In this instance there was testimony offered about the process for initiating violation of late evaluations, including Matti’s reminder to complete the evaluation notices first, second, third, fourth ... Id. at 69-75. Testimony from Personnel indicated that its department had prerogative to enforce this part of the ERA. As such, after reviewing their late evaluation reports and annual evaluation due reports, the Compliance Officer initiates the Ho-Cfmnk Nation Notice of Employment Relation Act Violation form. Id. at 75. It stands to reason that the Grievant had some knowledge of the matter at hand since he miraculously completed 8 of the 10 late evaluations with timeframe. The fact remains he had two (2) outstanding performance evaluations. Somehow, the lower court dismissed the ERA provision that mandates termination for failure to correct the action within the specified timeline because it perceived that “the factual assumption relied upon by the GRB that Mr. Falcon received notice or an ability to respond to his termination is arbitrary and capricious because it relies heavily upon hearsay and cobbled together inferences.” Further, the lower court ignored that the ERA only allows the Rule *399 of Evidence applicable in GRB proceedings. See ERA, Ch.V, Sec. 34 g(4). Hearsay rules do not apply. Therefore, this Court finds that the lower court did not properly apply the “arbitrary and capricious” standard.
III. Was the Trial Court’s Due Process analysis incorrect?
As articulated in the policy applying to the matter at hand, the ERA specifically states:
c. Failure to Complete Performance Evaluations.
(1) Non-Elected Supervisors. For the first violation, the supervisor failing to complete a Performance Evaluation shall be placed on probation and, for procedural violation, shall be required to take corrective action within ten (10) calendar days of the violation and probation. If the violation has not been corrected within ten (10) calendar days ... the supervisor shall be terminated from the position.... If the supervisor continues to violate this policy, he or she shall be terminated.
The lower court wrote, “Although the petitioner and the respondents attended meetings, no proof exists that the petitioner was notified of potential disciplinary action resulting from the lack of employee evaluations.” It appears that the lower court was more compelled by the petitioner statement that he recalled the meeting with Jean Day, Betty Kingsley and Elizabeth Haller, but denied the meeting was about evaluations as she [Day] testified. Rather than the collaborative statements of the respondents who testimonials included details about cost to their budget for excessive number of late evaluations or how to complete the late evaluations during the meetings.
Further, the grievant testified he had seen Toth, the Personnel Department Compliance Officer in his office during this probation time, and was the one responsible for initiating the form, yet he denied knowing about the form. He also argued that only his supervisors can put him on notice about the probation. Although suspicious to this Court and worthy of further inquiry, the lower court dismissed the oddity that this specific Personnel employee was visiting the place of work of the griev-ant during this timeframe. The remand just allowed the lower court to re-iterate why former decision to make a de novo standard of review was proper.
So who carries the burden that such form was not delivered. In this specific instance, the grievant had duty to show he did not receive the form. He admitted to seeing Ms. Toth in the office during this probationary period. He also testified that all interoffice mail received in their office was logged in by the secretary. He offered no proof that such log document showed the absence of her delivered form. Rather the Grievant cited the Kenneth Lee Twin v. Toni McDonald, et. al. SU 05-09, 6 Am. Tribal Law 172, 177-78 (Ho-Chunk Jul. 3, 2006) “It is a Due Process violation when a supervisor fails to afford an employee with at least a minimal opportunity to be heard before suspension or termination. Such an opportunity is a ‘bright line rule’ to which the employer must adhere.” Id.
In Twin, that grievant was not working at the time. During his time away from work, he provided the Personnel Department with address change information. In spite of the mailing address change, he did not receive proper notice because the Personnel Department used a former mailing address. The Grievant proved that he did not receive sufficient notice because of the Personnel staff admitted to receiving the *400 changed address information yet they used the wrong address to send out the notice.
In this instance, the Grievant indicated that he was working 40 hours a week and also only worked 6 hours each day. (Two statements made by the grievant that contradicted themselves.) His duty station had no changed throughout the duration of this matter. Regardless, the Grievant offered no reason why such personnel matters should be sent to his home while a full-time employee. It is reasonable to expect the Nation to delivers any personnel related items to the place of work or duty station, especially a Supervisor of the Nation. Further, he offered no record of failed mail problems throughout this duration. This Court does not believe the Nation should be responsible in reminding its Supervisors to read their business mail, electronic mail (i.e., groupwise), inter-office delivery or “pony express” on a consistent basis. Unable to draw any factual correlation, the Appellee’s relianee on Twin fails to reason by this Court.
This matter is the grievant had failed to complete 2 of the 10 outstanding evaluations in the purported timeframe. Due Process as noted in Lonetree is different since the former if due process properly applied may change the outcome of the discretionary discipline action. Due Process as noted in Twin is different since the former truly showed that no notice' was given and if given may have changed the outcome of the disciplinary action. However, here the discipline action for failure to abide by the timeframe is only termination as mandated by the ERA. A similar tribal law existing with employment in our gaming facilities, that is, in spite of the longevity of a gaming employee, that employee if convicted of a felony during employment will be terminated. The U.S. Supreme Court speaks to similar matter and stated that where the facts are undisputed and the punishment is truly automatic, there may be circumstances where no pre-termination process is required. See Cleveland Bd. Of Education v. Loudermill, 470 U.S. 532 at 543 n. 8, 105 S.Ct. 1487, 84 L.Ed.2d 494.
It is for these reasons, this Court finds the Trial Court’s analysis of due process incorrect.
IV. Did the Trial Court’s remedy violate the cap on damages under the HCN Limited Waiver of Sovereign Immunity?
Although the lower court attempted to award the Appellee during an interluctory, this Court stayed on the matter until a final decision. Now this Court is concluding that the termination is within the legal bounds of HCN ERA rules, the Appellee wall not receive any monetary remedy. Therefore, this Court need not entertain whether the lower court’s reference to Janet Funmaker v. Libby Fairchild, CV 06-61 (HCN Tr. Ct. Mar. 9, 2007), exceeds the limited waiver issue.
CONCLUSION
The Trial Court’s Remand Order (Reversing and Remanding to the Grievance Review Board) is reversed. The GRB Decision of 2007 is final and binding on all parties.
EGI HESKEKJENET.